WESTERN UNION TELEGRAPH CO. v. PETER & NEYLON.

(Court of Civil Appeals of Texas. Austin. Nov. 5, 1913. Rehearing Denied Nov. 26, 1913.)

1. FACTORS (§ 53*)—CUSTOM.

A purchaser through a factor is chargeable with knowledge of the custom of factors to follow the instructions of their customers, and is bound thereby.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 85; Dec. Dig. § 53.*]

2. TELEGRAPHS AND TELEPHONES (§ 53*)—ERROR IN TRANSMISSION—PROXIMATE CAUSE.

Where plaintiff's telegram, instructing his broker to sell cotton was changed in transmission so as to make it an order to buy cotton, and was executed as such, plaintiff who, on notice of the purchase, did not repudiate the purchase, but, relying upon the broker's judgment and thinking it had been purchased for his benefit, held it and sold it at a loss, the failure to promptly repudiate the contract was the proximate cause of the loss, so that plaintiff could not recover.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 53.*]

3. TELEGRAPHS AND TELEPHONES (§ 52*)—ERRONEOUS TRANSMISSION OF TELEGRAM—DUTY TO REDUCE DAMAGES.

In such case the customer, if he believed that his broker had disregarded his instructions, was bound at once to disaffirm; and, where he failed to do so in order to avoid or reduce loss, he could not recover for the loss resulting from the purchase.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 36; Dec. Dig. § 52.*]

Appeal from Fayette County Court; Geo. Willrich, Judge.

Action by Peter & Neylon against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Webb & Goeth, of San Antonio, and C. D. Kranse, of La Grange, for appellant. John T. Duncan, of La Grange, for appellee.

RICE, J. This suit was brought by appellees against appellant to recover damages occasioned by its failure to correctly transmit a telegram sent by them to their brokers at New Orleans, La., instructing them to sell certain cotton futures for their account. Appellees, who are residents of Winchester, Tex., on July 26, 1911, believing that the cotton quotations for January, 1912, delivery were too high, and acting upon information received from their brokers, concluded to sell 200 bales for January delivery, and about 1 o'clock of that day forwarded a telegram over appellant's line to their brokers, H. & B. Beer, of New Orleans, instructing them to sell for their account 200 bales of cotton, January, 1912, delivery. This telegram, though promptly sent, was in fact changed in transmission so as to read "buy 200 bales cotton January delivery." Upon receipt of this telegram, the said Beer & Co. immediately purchased for the account of appellees, their principals, 200 bales of cotton January, 1912, delivery, paying therefor the sum of 11½ cents per pound; and upon the same day wired appellees what they had done, which telegram was promptly delivered to and received by appellees about 4 o'clock on said day. Believing that their agents had disregarded their instructions, they did not, however, at that time repudiate this purchase, nor seek to protect themselves against loss, because, having implicit confidence in the good judgment and integrity of their brokers, they felt that they were acting for their best interests in making such purchase. But they were not apprised of the mistake in the message until the 28th of July; whereupon they wired their agents disaffirming said purchase, and instructing them to sell 200 bales of cotton, January delivery, for their account, which last instructions were promptly carried out, and that amount of cotton sold for 11.20 cents per pound, of which they were advised, and by which transaction they claim to have lost $300 on account of the negligence of appellant, and have brought this action to recover the same, together with $30, commissions paid for making such sale. Appellant defended: First, on the ground that the message was not repeated, in accordance with a provision requiring this to be done in order to hold it liable for more than the cost of the message, in the event of default, miscarriage, or delay in delivery; and, second, set up in bar of appellees' right to recover the fact of their failure to promptly repudiate said purchase upon receipt of the first telegram, and took no action to protect themselves nor minimize their damages, but relied upon the good judgment of their agents, who they believed had made the purchase for their best interests, with full knowledge of the market conditions, whereby appellees were guilty of contributory negligence, and were estopped. A trial before the court resulted in a judgment in favor of appellees for the sum of $300, from which this appeal is taken.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

[1] Without passing upon the merits of appellant's first contention, we sustain its second assignment, which asserts that the court erred in failing to render judgment in its behalf because plaintiffs took no steps to protect themselves against loss when first apprised of the purchase of the cotton for their account, but relied upon the belief that such purchase would result in their benefit. It appears that if appellees, when first apprised of this purchase, had repudiated it, no loss would have resulted. Mr. Beer, one of their brokers, testified that during a business experience of 30 years, he had always followed the instructions of his customers, and it is a matter of common knowledge that brokers usually do so. A purchaser is charged with knowledge of the custom of factors, and is bound thereby. Harbert v. Neill Bros. & Co., 49 Tex. 143. We do not believe that it could be presumed, in the absence of proof to the contrary, that the brokers had disregarded their instructions in this instance, but rather the presumption would lie that some mistake had been made in the transmission of the message, which they could have ascertained and rectified by prompt telegraphic inquiry; for which reason we think that appellees, at the time they received information that their agents had purchased, instead of sold, this cotton, were not justified in believing that their agents had disobeyed instructions.

[2] But, be this as it may, it appears from their own testimony that they did not repudiate the purchase, and took no steps to protect themselves against loss on account thereof, because, irrespective of whether they believed their agents had disobeyed them, they felt secure in the belief that the former were acting for their best interests, and bought the cotton for their account, instead of selling, as directed, from which we must infer that they expected a profit rather than a loss from this transaction, thereby taking chances upon the judgment of their brokers, rather than depending upon their own. Notwithstanding the appellant in the present case was negligent on account of its mistake in transmitting the message, yet we think that if plaintiffs knew of such fact, or were charged with notice thereof, and could have prevented the loss by resort to available means within their power, and failed to do so, and such failure proximately contributed to such loss, they would be guilty of contributory negligence, and could not recover. See section 326, Jones on Telegraph & Telephone Companies; S. W. Telegraph & Telephone Co. v. Gotcher, 93 Tex. 117, 53 S. W. 686. See, also, Telegraph Co. v. Jeanes, 88 Tex. 230, 31 S. W. 186, where it is said that one who is threatened with danger by reason of the negligent conduct of another should exercise reasonable prudence to avert the injury. See, also, Beach on Con. Neg. § 33; Jones on Tel. & Tel. Cos. § 322. We, therefore, think that the loss in this instance must be attributable, either to appellees' own negligence, or to their absolute reliance upon the discretion and judgment of their agents, and that the failure to correctly transmit the telegram was not the proximate cause of their loss. Their silence and inaction may be regarded, we believe under all the circumstances in evidence, as an acceptance and ratification of this purchase by their agents.

[3] In 19 Cyc. 142 (20) it is said: "If a factor buys the goods of his principal, the latter may elect whether he may ratify or repudiate the sale. A principal may ratify the factor's disobedience of instructions, or his other wrongful act, either by actual approval, or by failure to disapprove within a reasonable time after notice." If appellees believed that their agents had disregarded their instructions, then it became their duty at once to disaffirm; and a failure to do so, under the facts of this case, must be regarded, we think, as an acceptance of the purchase, and would prevent recovery. Besides this, the company would only be liable for such damages as were the proximate result of the negligence alleged. If the damages were due to some other independent or intervening cause, then the appellant is not liable. 37 Cyc. 1754.

In 3 Sedgwick on Damages, § 897, it is said that the rule of proximate cause is often of great assistance in defining the liability of telegraph companies. To ascertain whether any damages can at all be recovered—i. e., whether an action will lie—the preliminary question must always be asked whether the loss complained of arises from the act or omission of the telegraph company, or some intervening agency or cause. Thus where B. sends a dispatch to plaintiff asking for $500, which the company by mistake changed to $5,000, and B. on obtaining the latter sum embezzled it and absconded, it was held by the New York Court of Appeals that the loss was the result, not of the error in the transmission of the dispatch, but of B's own independent act. See Lowry v. Western Union Telegraph Co., 60 N. Y. 198, 19 Am. Rep. 154; 2 Parsons on Contracts, 250, 257.

Notwithstanding the mistake in the transmission of the telegram, we think in the present case that their own conduct was the proximate cause of plaintiffs' loss, for which reason also they should not recover.

It, therefore, becomes our duty to reverse the judgment of the court below, and here render judgment in behalf of appellant, which is accordingly done.

Reversed and rendered.